UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REVEREND PATRICK J. MAHONEY,** )<br>4019 Duke of Gloucester )<br>Fredericksburg, VA 22407 )<br> )<br>**CHRISTIAN DEFENSE COALITION,** )<br>301 Amelia Street )<br>Fredericksburg, VA 22401 )<br>*Plaintiffs,* )<br> )<br> )<br>-vs.- )<br> )<br>**BRUCE BABBITT,** in his official capacity )<br>as **SECRETARY OF THE UNITED** )<br>**STATES DEPARTMENT OF THE** )<br>**INTERIOR,** )<br>1849 C Street NW )<br>Room 6151 )<br>Washington, DC 20240 )<br> )<br>and )<br> )<br>**THE NATIONAL PARK SERVICE** )<br>1849 C Street NW )<br>Room 3104 )<br>Washington, DC 20240 )<br> )<br>*Defendants.* ) | **CIVIL ACTION NO.**<br><br>CASE NUMBER 1:96CV02827<br><br>JUDGE: Harold H. Greene<br><br>DECK TYPE: TRO/Preliminary Injunction<br><br>DATE STAMP: 12/23/96 |

FILED

DEC 23 1996

Clerk, U.S. District Court
District of Columbia

**VERIFIED COMPLAINT
FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

The Plaintiffs, by counsel, complain as follows:

**I.
INTRODUCTION**

(1)    The Plaintiffs bring this action to obtain injunctive relief and a declaratory judgment

declaring unconstitutional certain threatened deprivations of their first, fourth, and fifth amendment rights and rights under the Religious Freedom Restoration Act by the National Park Service of the United States Department of the Interior. The Defendants have threatened to subject the Plaintiffs to conduct that will constitute unlawful arrest, detention, assault, threat, harassment, opprobrium, and interference with the peaceful exercise of their federal constitutional and statutory rights to the freedom of speech, of assembly, to petition for redress of grievances, of association and of religion, as well as their rights to due process of law and their implied right equal protection of the laws.

## II.
## JURISDICTION AND VENUE

(2)    This is an action under the Religious Freedom Restoration Act and the Declaratory Judgment Act seeking equitable and declaratory relief to cure threatened future deprivations of the federal rights of the plaintiffs, all of which are threatened to be inflicted by conduct taken by the Defendant. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343(a)(4), 2201 and 2202.

(3)    Venue is appropriate in the District of Columbia, in accord with 28 U.S.C. § 1391(e) because all of the acts threatened to be taken that would constitute the injury to the Plaintiffs are threatened to occur in the District of Columbia, and because the United States Department of the Interior, National Park Service, resides in the District of Columbia.

## III.
## PARTIES

### THE PLAINTIFFS

(4)    Reverend Patrick J. Mahoney is a citizen of the United States and a resident of the

Eastern District of Virginia. Reverend Patrick J. Mahoney is the Director of the Christian Defense Coalition.

(5)    The Christian Defense Coalition is a corporation organized and existing under the laws of the Commonwealth of Virginia. The Christian Defense Coalition represents a national coalition of pro-life, activist, christians.

## THE DEFENDANTS

(6)    Bruce Babbitt, Secretary of the United States Department of the Interior, is sued in his official capacity as the representative for the Department of the Interior. Bruce Babbitt, the Secretary of the Interior, is charged with promulgating and enforcing regulations required for administering the United States National Park System, including the public sidewalks adjacent to Pennsylvania Avenue in the District of Columbia.

(7)    The National Park Service is a service within the United States Department of the Interior, responsible for the promotion and regulation of the use of Federal parks.

## IV.
## ALLEGATIONS OF FACT

(8)    Reverend Mahoney is a christian, whose sincerely held religious beliefs include the belief that he is obliged by the Great Commission to preach the good news, the gospel, of salvation through Jesus Christ to the whole world, and to confront wickedness in high places, and to minister to those whose lives are impacted by the ready availability of abortion services in the United States.

(9)    In obedience to his religious beliefs, Mahoney goes to public places and public events for the purpose of creating opportunities to preach the gospel, confront wickedness in high places, and minister to those impacted by the ready availability of abortion in the United States.

(10)    Mahoney has associated himself with other like-minded persons who are also christians, those individuals also joining with Mahoney in his outreach activities.

(11)    Reverend Patrick Mahoney has a personal religious conviction that President Clinton's veto of legislation criminalizing one form of late term abortions (commonly referred to as "partial birth abortions") constitutes sin against God and crime against humanity.

(12)    Reverend Patrick Mahoney has a personal religious conviction that President Clinton's sin against God and crime against humanity, a consequence of the President's strong attachment to abortion rights, constitutes a corruption of lawful government to which he has a religious duty to respond by displaying photographic depictions of the consequences of his sin against God and crime against humanity.

(13)    Obeying his religious convictions, Reverend Mahoney planned to display evidence of the true impact of the President's sin against God and crime against humanity in vetoing the statutory ban on partial birth abortions, through constitutionally protected expression.

## Operation John The Baptist

(14)    Mahoney refers to his plan of confrontation as Operation John the Baptist, in honor of the biblical figure beheaded for confronting a king for his sin against God.

(15)    Operation John the Baptist, as conceived and planned by Reverend Mahoney, includes plans for three separate efforts to communicate to the President a confrontational message of disapproval for his sin against God and crime against humanity.

(16)    On November 13, 1996, Mahoney filed three applications with the National Park Service to conduct demonstrations in National Capitol Region parks on Inauguration Day, January

20, 1997.

(17)    One application fully executed sought permission to conduct a prayer service in the northeast quadrant of Lafayette Park on January 20, 1997.

(18)    A second fully executed application sought permission to erect a field of up to four thousand, four hundred white crosses in the northeast quadrant of the Washington Monument grounds, as well as a banner explaining that the number of crosses reflected the number of children who die each day in the United States as a result of abortions.

(19)    A third fully executed application sought a permit for Mahoney and up to, but no more than, 299 others to stand along the sidewalks of Pennsylvania Avenue holding large photographs graphically depicting children who were the victims of late-term abortion procedures. That application specifically requested that placement on the north and south sidewalks of Pennsylvania Avenue between Ninth Street and Tenth Street NW.

### National Park Service

(20)    A federal regulation promulgated by the National Park Service, 36 C.F.R. § 7.96(g)(3), provides that a fully executed application for a permit to demonstrate is "deemed granted" if it is not denied within twenty-four hours of receipt.

(21)    Accordingly, no later than November 14, 1996, pursuant to federal regulation, all three of Reverend Mahoney's permit applications were deemed granted.

(22)    That same regulation, 36 C.F.R. § 7.96(g)(3), provides that a "deemed granted" permit may be revoked by the Field Director, in accord with subsequent subsections of the regulation.

(23)    Subsequent to November 14, representatives of the National Park Service have confirmed that two of the applications will be granted. Those applications were for the cross display on the Washington Monument grounds and for the prayer service in Lafayette Park.

(24)    In response to the receipt of his applications, Reverend Mahoney spoke with representatives of the National Park Service's National Capitol Region office on or around December 5, 1996. Those representatives communicated to Reverend Mahoney that there was a problem with his application for a demonstration permit for Pennsylvania Avenue during the Inaugural Parade.

### The December 11 Meeting

(25)    Because his permit application apparently raised some point of controversy for the National Park Service, a meeting between Reverend Mahoney, Mahoney's counsel, representatives of the National Park Service, and counsel for the National Park Service was held on December 11, 1996.

(26)    During the December 11 meeting, two topics were discussed: Mahoney's specific plans for the field of crosses on the Washington Monument grounds; and, Mahoney's plan to confront President Clinton by displaying large graphic posters of late term aborted children while standing on the sidewalks adjacent to the Pennsylvania Avenue route of the Inaugural Parade.

(27)    After answering numerous questions that fleshed out Mahoney's specific plan for the field of crosses, it became apparent to Mahoney that the National Park Service would grant his permit for the field of crosses. The meeting then turned to the second topic: Mahoney's request for space alongside the Inaugural Parade route.

(28)    Randall Myers, counsel for the National Park Service, stated that there was a prior

fully executed permit application for a use in the same space that Mahoney sought for his sign displays, but declined to provide a copy of said prior, fully executed permit application; Mr. Myers never stated that the permit application was filed with the National Park Service *by* the National Park Service.

(29)    Randall Myers indicated that it was very unlikely that multiple uses would be permitted because the prior application called for a use that would fully occupy the entire Pennsylvania Avenue corridor.

(30)    Reverend Mahoney inquired whether a variation in the number of persons involved in his proposed demonstration or in the demonstration location along Pennsylvania Avenue would make a shared use feasible.

(31)    After discussing the subject extensively, Randall Myers again reiterated his view that it was very unlikely that Reverend Mahoney would received his proposed permit.

(32)    Reverend Mahoney expressed an interest in going out on the public sidewalk along Pennsylvania Avenue alone with a sign depicting a late term abortion.  He inquired what result would occur if he, alone, were to do so.

(33)    Randall Myers stated that Reverend Mahoney would be subject to arrest and fine for demonstrating without a permit if he did so alone or with others.

(34)    Randall Myers stated that Reverend Mahoney would receive written notice of the decision of the National Park Service during the week of December 16, 1996.

### The Letter From Director Merryman

(35)    On December 18, 1996, Reverend Mahoney received a letter from Richard Merryman,

National Park Service Director of Park Programs.

(36)    In the December 18 letter, Merryman notified Reverend Mahoney that "the National Park Service has determined that it cannot grant [his] permit request."

(37)    Merryman explained in his letter that a prior fully executed permit application had been filed for the same place and time, in June 1996, by the National Park Service for the National Park Service.

(38)    Merryman confirmed in his letter that the National Park Service would grant the Lafayette Park and Washington Monument grounds permits.

(39)    Further, Merryman proposed two alternative locations for Mahoney's poster displays, which alternative locations are not along Pennsylvania Avenue.

(40)    Ultimately, in the letter, Merryman reiterated the statement made to Mahoney in the December 11 meeting by Randall Myers:

> "You indicated you would place small groups throughout the Pennsylvania Avenue parade route in space assigned to the Presidential Inaugural Committee. Engaging in this conduct would be illegal and would subject you and your group to potential arrest and fine. You indicated you and your members were prepared to demonstrate and be arrested.".

(41)    Merryman's letter continued by explaining the National Park Service's view that two court decisions justified the decision to arrest and fine Mahoney or his associates.

<u>Inauguration Day 1997</u>

(42)    Whether or not any of his associates join with him, Reverend Patrick Mahoney desires and plans to attend the Inaugural Parade on January 20, 1997, for the purpose of seeking opportunities to display photographic evidence of the consequnces of legalized partial

birth abortions.

(43)    Reverend Mahoney has no intention, desire or plan to interfere with the passage of the parade, or to be a part of the parade, or to be a unit in the parade.

(44)    Reverend Mahoney's only intention and plan regarding attendance as a viewer of the Parade is to stand on one of the Pennsylvania Avenue sidewalks with a poster graphically depicting the consequences of President Clinton's veto of the partial abortion ban.

(45)    The Christian Defense Coalition does plan and desire to carry through with its plan to have posters graphically depicting the consequences of President Clinton's veto of the partial abortion ban displayed by my associates in the organization on the sidewalks along Pennsylvania Avenue.

### The Sidewalks Adjacent to Pennsylvania Avenue

(46)    Prior to this year, Reverend Patrick Mahoney would not have been required to obtain a permit from the National Park Service to conduct this activity because it was only in or around April, 1996, that jurisdiction of the sidewalks, parklands, trees and memorials along Pennsylvania Avenue came within the jurisdiction of the National Park Service, upon the dissolution of the Pennsylvania Avenue Development Corporation.

(47)    The Pennsylvania Avenue sidewalks are broad pedestrian walkways.

(48)    The Pennsylvania Avenue sidewalks are continuous through a significant portion of the downtown District of Columbia area.

(49)    The Pennsylvania Avenue sidewalks are not marked by any special enclosure, any gated entrances, any posted requirements for identification, any restriction imposing limitations on

access.

(50)    In sum, the Pennsylvania Avenue sidewalks are archetypical sidewalks.

(51)    Pursuant to the federal statute transferring administrative responsibility for the Pennsylvania Avenue National Historic Park from the Pennsylvania Avenue Development Corporation to the National Park Service, the statute "shall not be construed as affecting the validity of any right, duty, or obligation of the United States or any other person arising under or pursuant to any contract, loan, or other instrument or agreement which was in effect on the day before the date of the transfers" resulting from the dissolution of the Development Corporation.

## IV.

## ALLEGATIONS OF LAW

(52)    Both now and at the time of the incidents described herein, the Religious Freedom Restoration Act clearly protected from governmental infringement the right to religious freedom, and the United States Constitution protected from governmental infringement the right to freedom of speech, the right to peaceable assembly, the right to petition for redress of grievances, the right to free exercise of religion, the right to due process of law, and the right to equal protection of the law. The defendants, therefore, know or should know that their threatened conduct, described in the foregoing Allegations of Fact, will violate the federal statutory and constitutional rights of the Plaintiffs.

(53)    The threatened arrest of Pastor Mahoney or persons demonstrating under the "deemed granted" permit of Reverend Mahoney, the subsequent carrying out of those arrests, the wrongful incarceration of persons so arrested, the wrongful initiation of criminal proceedings against persons

so arrested, and the deprivation of constitutional rights and civil liberties that would result from those wrongful acts constitute injuries of rights protected by the United States Constitution, the Declaratory Judgment Act, and the Religious Freedom Restoration Act.

(54)    Reverend Mahoney does not have any adequate remedy at law for the injuries threatened against him by the National Park Service and the Department of the Interior.

## FIRST CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO FREEDOM OF SPEECH GUARANTEED BY THE FIRST AMENDMENT

(55)    The Plaintiff alleges and incorporates herein by reference all the preceding paragraphs of this Verified Complaint.

(56)    Pastor Mahoney's planned display of signs containing images of the victim's of late term abortions are protected from suppression because of content by the Free Speech Clause of the First Amendment.

(57)    Pastor Mahoney's planned activity will take place on public sidewalks, to-wit, the sidewalks adjacent to Pennsylvania Avenue in the District of Columbia.

(58)    The enforcement, against Pastor Mahoney, of a ban on signs because the content of those signs is disparate from the intended message of the National Park Service for the Inaugural Parade will violate Pastor Mahoney's federal constitutional right to freedom of speech.

(a)    The ban on Mahoney's sign display is a viewpoint-based restriction that would be unconstitutional even in a nonpublic forum.

(b)    The ban on Mahoney's sign display is a content-based restriction that does not further any compelling government interest, or which does not do so in the least restrictive

manner.

(d)    The ban on Mahoney's sign display, which the Defendants attempt to justify by claiming that such speech may still occur elsewhere than on the Pennsylvania Avenue sidewalks or at times other than on Inauguration Day, 1997, is not a reasonable regulation.

WHEREFORE, the Plaintiff respectfully prays that the Court grant the relief set out in the Prayer for Relief below.

## SECOND CAUSE OF ACTION:
## ALLEGING VIOLATION OF THE
## RELIGIOUS FREEDOM RESTORATION ACT

(59)    The Plaintiff alleges and incorporates herein by reference all the preceding paragraphs of this Verified Complaint.

(60)    Reverend Mahoney's public display of signs depicting the consequences of President Clinton's sin against God and crimes against humanity by his veto of the partial birth abortion ban and his determined support for abortion rights are born of Reverend Mahoney's sincerely held religious convictions.

(61)    Reverend Mahoney's sincerely held religious convictions compel his speech against the wickedness of temporal governmental institutions and leaders, including President Clinton.

(62)    Operation John the Baptist is not a religious preference or a mere consideration. It is the embodiment of a tenet of the religion of which Reverend Mahoney is an adherent.

(63)    The National Park Service's threat to arrest Reverend Mahoney if he alone, or with any number of his associates, carries through with his planned religious activity, communicated orally in the December 11 meeting and by letter on December 18, is government action that affects

or restricts the right to free exercise of religion.

(64)    The National Park Service's threats violate Reverend Mahoney's rights under the Religious Freedom Restoration Act because a complete ban on Mahoney's photographic display to the President during the Inaugural Parade is not justified by any compelling governmental interest.

(65)    The National Park Service's threatened conduct violates Reverend Mahoney's rights under the Religious Freedom Restoration Act because a complete ban on Mahoney's confrontational communication to the President during the Inaugural Parade is not the least restrictive means available to serve any compelling governmental interest asserted by the National Park Service.

WHEREFORE, the Plaintiff respectfully prays that the Court grant the relief set out in the Prayer for Relief below, including the Declaration of Rights, the issuance of injunctive relief, and the award of costs, including a reasonable award of attorney's fees, in accord with the provisions of the Religious Freedom Restoration Act.

### THIRD CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO PEACEABLY ASSEMBLE
### GUARANTEED BY THE FIRST AMENDMENT

(66)    The Plaintiff alleges and incorporates herein all the preceding paragraphs of the Verified Complaint.

(67)    The right to peaceable assembly includes the right to advocate one's views and opinions in open public places for the purpose of seeking and obtaining social and governmental change.

(68)    Pastor Mahoney's planned sign displays will constitute peaceful advocacy by a member of the body politic.

member of the body politic.

(69)    The sidewalks adjacent to Pennsylvania Avenue in the District of Columbia always constitute an archetype of the traditional public forum.

(70)    Pastor Mahoney's criticism of President Clinton's veto of the partial birth abortion ban and of the President's strong support for abortion rights is protected from governmental suppression in the traditional public forum by the right to peaceable assembly.

(71)    The enforcement of a ban on sign displays critical of the President's veto of the partial birth abortion ban or of the President's strong support for abortion rights chills and abridges the right of the Plaintiffs to peaceably assemble.

WHEREFORE, the Plaintiff respectfully prays that the Court grant the relief set out in the Prayer for Relief.

## FOURTH CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO PETITION FOR REDRESS GUARANTEED BY THE FIRST AMENDMENT

(72)    The Plaintiff alleges and incorporates herein all the preceding paragraphs of the Verified Complaint.

(73)    The Plaintiffs have planned Operation John the Baptist in order to confront President Clinton regarding his veto of the partial birth abortion ban and his strong support of abortion rights.

(74)    The Plaintiffs' purpose in displaying a sign or signs on the sidewalks along the Inaugural Parade route is to obtain changes in the policies of President Clinton regarding the partial birth abortion ban and the issue of decriminalized abortion generally.

(75)    The Plaintiffs' planned conduct of displaying a sign or signs on the sidewalks along

the Inaugural Parade route will constitute a petition for redress of grievances.

(76)    The right of the people, including the Plaintiffs, to petition for a redress of grievances, is guaranteed by the First Amendment.

(77)    The conduct threatened by the National Park Service, including arrests, assaults, incarcerations, wrongful imprisonments, and wrongful initiation of criminal processes, directed at the Plaintiffs because of their exercise of the right to petition for redress of grievances, will violate that right to petition for redress of grievances.

WHEREFORE, the Plaintiff respectfully prays that the Court grant the relief set out in the Prayer for Relief below.

### FIFTH CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AMENDMENT

(78)    The Plaintiff alleges and incorporates herein all the preceding paragraphs of the Verified Complaint.

(79)    The regulations regarding demonstrations in National Capitol Region Parks, including the sidewalks along Pennsylvania Avenue, are unconstitutionally vague.

(80)    36 C.F.R. § 7.96(g)(3) is unconstitutionally vague because it is written to misleadingly communicate to a permit applicant that, if a permit application is not denied with twenty-four hours, the permit is "deemed granted."

(81)    The regulatory nuance, "deemed granted," is a phrase or term, the meaning of which is lost on men of common or ordinary intelligence.

(82)    36 C.F.R. § 7.96(g)(3), (4), and (6) suffer from an additional, unconstitutional

vagueness defect, in that pursuant to (g)(3) a "deemed granted" permit may be revoked by the Regional Director in accord with the provisions of (g)(6); (g)(6), in turn, states that a permit may be revoked in writing for the reasons set forth in (g)(4) and (5); (g)(4)(iii)(A), then, provides that a permit can be revoked when a prior fully executed permit application for the same time and the same place has been received, which application when granted would authorize activities that would not reasonably permit multiple occupancy of the requested area.

(83)    As a consequence of the interdependent working of subsections (g)(3), (4), and (6), a permit that has been "deemed granted" is subject to revocation if, in the judgment of unidentified persons, the activity contemplated in the "deemed granted" permit is such that the National Park Service could not permit multiple occupancy .

(84)    As a consequence of the interdependent working of subsections (g)(3), (4), and (6), a permit that has been "deemed granted" is subject to revocation if, based on an unidentified set of standards or without any concrete, objective standards at all, the activity contemplated in the "deemed granted" permit is such that the National Park Service could not permit multiple occupancy.

(85)    Upon information and belief, the judgment of whether multiple occupancy may be reasonably permitted is made by the person, persons, group or groups that have filed the prior permit application, with absolutely no concrete, objective standards confining the discretion so assigned to such parties.

(86)    Because no standards are established for determining whether multiple occupancy can reasonably be permitted, and/or because such standardless discretion is conveyed to private parties under the regulation, the regulation fails to adequately advise persons subject to prosecution

under it of the obligations it creates.

(87)    Because of the failure of the regulation to provide adequate notice of required or prohibited conduct, the policy is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

(88)    The regulation is irrational and unreasonable, imposing irrational and unreasonable restrictions on the exercise of pristine constitutional rights.

(89)    Because the policy is irrational and unreasonable, it violates the Due Process Clause of the Fifth Amendment.

WHEREFORE, the Plaintiff respectfully prays that the Court grant the relief set out in the Prayer for Relief below.

### SIXTH CAUSE OF ACTION: ALLEGING VIOLATION OF THE IMPLIED RIGHT TO EQUAL PROTECTION GUARANTEED BY THE FIFTH AMENDMENT

(90)    The Plaintiff alleges and incorporates herein all the preceding paragraphs of the Verified Complaint.

(91)    The Department of the Interior and the National Park Service, by their employees, have threatened to arrest Reverend Mahoney and his associates during the Inaugural Parade on January 20, 1997, if Reverend Mahoney or his associates display signs critical of President Clinton or of his veto of the partial birth abortion ban.

(92)    The threat to arrest was communicate twice, in the December 11th meeting and in the letter received December 18th.

(93)    On both occasions, the National Park Service has indicated that the content or

viewpoint of Reverend Mahoney's signs would be the deciding factor in determining whether or not he would be arrested, and that it was the fact of Mahoney's apparent plan to criticize and admonish the President that would impel the National Park Service to arrest and prosecute Reverend Mahoney.

(94)   The National Park Service's announced threat, and its embodiment in the National Park Service's interpretation of the relevant regulations, discriminate among speakers based on the content and viewpoint of their speech, but are not justified as necessary to accomplish a compelling interest.

(95)   Arrests and prosecutions because of private or governmental disagreement with the content or viewpoint of speech does not constitute the least restrictive means of serving any compelling government interest.

WHEREFORE the Plaintiff respectfully prays that the Court grant the relief set out in the Prayer for Relief below.

## GENERAL PRAYER

(96)   The Plaintiff respectfully prays, on the foregoing, that the Court grant judgment as set forth herein:

A.   That the Court enter a declaratory judgment, declaring the rights and relations of the parties herein;

B.   That the Court enter preliminary and permanent injunctive relief against further enforcement of the oral and written threats of the Defendants prohibiting Reverend Mahoney and his associates from displaying signs critical of President Clinton's veto of the partial birth abortion ban or of his strong support for abortion rights while on the sidewalks adjacent to

(97)     The Plaintiff respectfully prays that the Court award to him the costs of this litigation,

including a reasonable award of attorneys fees pursuant to the provisions of the Religious Freedom

Restoration Act, Title 42 U.S.C. §§ 2000bb, and the Equal Access to Justice Act, Title 28 U.S.C. §

2412.

(98)     The Plaintiff respectfully prays that the Court award to him such other and further

relief as the Court deems just.

Dated:  December 23, 1996.

Respectfully submitted,

Jay Alan Sekulow *
The American Center for Law and Justice
1000 Regent University Drive
Virginia Beach, VA  23467
(757) 549-2749

James Matthew Henderson Sr. # 452639
 *Counsel of Record*
Colby M. May # 394340
The American Center for Law and Justice
Suite 304
1000 Thomas Jefferson Street NW
Washington, DC  20007
(202) 337-2273

*Attorneys for the Plaintiffs*

*     Not admitted this jurisdiction

## VERIFICATION OF COMPLAINT

I, Reverend Patrick J. Mahoney, a citizen of the United States and of the Commonwealth of Virginia, hereby declare under penalty of perjury, that I have personal knowledge of the facts contained in the foregoing complaint, and that those statements of fact are true and correct.

Executed on this 21 th day of December, 1996, in the Commonwealth of Virginia.

REVEREND PATRICK J. MAHONEY